construct its railroads in these streets, and under the provisions of section 98 of the railroad law of 1890, the defendant was bound to repave the streets when necessary, that the defendant was liable to the plaintiff for the cost of the repavements.

It follows that the judgment in this case is reversed, and a new trial ordered before the same referee, with costs to the appellant to abide the event.   All concur

---

### CITY OF NEW YORK v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   March 12, 1909.)

STREET RAILROADS (§ 38*)—STREET PAVING—LIABILITY OF COMPANY.

By accepting the terms of a resolution authorizing the use of streets for street railway purposes on condition that the grantee and his successors be bound absolutely and unqualifiedly to keep in permanent repair the parts of streets lying between the tracks and for two feet outside the rails, a company bound itself to make such repairs, including repaving when new paving is required in adjoining streets and avenues, the question for such necessity being for the municipal authorities to determine; but it has the right to do the work itself, and opportunity must be given it to do so before the company is liable for repavement or repairs made by the city.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 109; Dec. Dig. § 38.*]

Appeal from Judgment on Report of Referee.

Action by the city of New York against the Metropolitan Street Railway Company.   From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Theodore Connoly and Royal E. T. Riggs, for appellant.
Arthur H. Masten, for respondent.

INGRAHAM, J.   This appeal was argued with the case of City of New York v. Broadway & Seventh Avenue Railroad Company (decided herewith) 115 N. Y. Supp. 872.   The action was brought to recover for the expense of repaving certain portions of Twenty-Eighth and Twenty-Ninth streets through which the line of railroad operated by the defendant ran.   The defendant obtained its franchise by transfer from a company known as the Twenty-Eighth & Twenty-Ninth Street Railroad Company, who acquired it under a resolution of the the common council of the city of New York passed on November 30, 1886.   By that resolution the consent of the city of New York was given to the said railroad company to construct, maintain, use, and operate, upon the conditions therein named, and not otherwise, a street railroad upon and through certain streets and avenues designated. The conditions upon which the grant was made were that the provisions of chapter 252, p. 309, of the Laws of 1884, pertinent thereto, should be complied with, and that the right, franchise, and privilege

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of using the said streets and avenues, subject to all the provisions of chapter 252, p. 309, of the Laws of 1884, and of chapter 642, p. 919, of the Laws of 1886, should be sold at public auction to the highest bidder; that the bidder to whom the aforesaid sale should be made, and any person or corporation using the tracks, or any part of the tracks, constructed or laid under or in pursuance of the consent then given, should comply with any and all provisions of law applicable to any street surface railroad company organized under chapter 252, p. 309, of the Laws of 1884; that the said bidder as to the whole route described should be absolutely and unqualifiedly bound, and any person or company using or operating a railroad upon the tracks, or any part of the tracks, constructed upon the said route, under and by virtue of the consent thereby given or the sale had in pursuance thereof, as to the tracks so used by it or him, "shall be jointly and severally bound with the said bidder absolutely and unqualifiedly to repair and keep in permanent repair the portion of said streets and avenues upon which the tracks shall be so constructed between the tracks, the rails of the tracks, and a space of two feet in width outside of and adjoining the outside rails of the track or tracks, so long as such tracks so constructed shall continue to be used, and this obligation in respect to repairing of the streets shall not be dependent upon the requirements of the local authorities, but is hereby made an absolute and unqualified obligation." It further provided that any person or company who should use or operate a railroad upon the tracks, or any part of the tracks, constructed upon the route described under or by virtue of the consent thereby given, or the sale had in pursuance thereof, should be subject to the same conditions, liabilities, obligations, duties, and payments in respect to such use or operation by him or it of or upon such tracks as the bidder to whom the sale should be made under the consent would be subject, were such use or operation made by such bidder. In pursuance of this ordinance, the franchise was sold, and was purchased by the Twenty-Eighth & Twenty-Ninth Street Railroad Company; and in pursuance of that sale that company executed an instrument whereby it accepted the consent of the common council of the city of New York, and covenanted and agreed to and with the mayor, aldermen, and commonalty of the city of New York, and their successors, "that it will well and truly comply with, and faithfully perform and keep, each and every of the said terms and conditions in said resolution above mentioned."

I think it clear that, by accepting the terms and conditions of this resolution, the railroad company bound itself to repair and keep in permanent repair the portions of the said streets or avenues upon which the tracks were to be constructed, between the tracks and a space two feet in width outside of and adjoining the outside rail of the track or tracks; that such obligation included the obligation to repave that portion of the street when, in consequence of the condition of the existing pavements, or the improvement of the adjoining streets and avenues, a new pavement was required in such street or streets; and that the question as to the necessity of such new pavement necessarily depended upon the decision of the municipal authorities. Mayor v.

Harlem Bridge, etc., Co., 186 N. Y. 304, 78 N. E. 1072. The obligation imposed upon this railroad company is much broader than that in the case cited. It is absolutely and unqualifiedly bound to repair and keep in permanent repair the portion of the said streets and avenues upon which the tracks are to be so constructed, and this obligation in respect to repairing the streets was not to be dependent upon the requirement of the local authorities, but is made an absolute and unqualified obligation. There would have been, therefore, no question if the city had given notice to the railroad company that a new pavement was required in this street and that it must comply with its obligation and repave the streets between its rails; but no such notice was given. The city made a contract to do the work, and proceeded and did it, without giving the railroad company an opportunity to comply with its obligations.

The referee found that the plaintiff had not proved or attempted to prove that, prior to the laying of the new pavement at said location, a notice of 30 days, or any notice whatever, was given by it to the defendant, requiring or requesting the defendant to repair the pavement, or any portion of the pavement, or to repave, or make pavements or repairs, in or about the defendant's tracks or rails, at said location, or either of them. It will be noticed that the obligation assumed by the defendant was to repair and keep in repair this street. There was no agreement that it would repay the cost of repavement made by the plaintiff; and to enforce that obligation I think it clear that an opportunity must be given to the defendant to do the work before it can be made liable for a repavement or repairs made by the city. While its obligation to repave was absolute and unqualified, it had the right to do the work itself, and a liability cannot be imposed upon it because the city voluntarily assumed its obligation without notice or in some way putting the railroad company in default.

For that reason, I think the judgment must be affirmed, with costs. All concur.